PHILLIP A. TALBERT
Acting United States Attorney
KAREN A. ESCOBAR
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile:  (559) 497-4099

FILED

MAY 12 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>                     v.<br><br>MIKHAEL ISSA KAMAR,<br>  aka Michael Kamar,<br>  aka Mike Kamar,<br><br>                                    Defendant. | CASE NO.  1:13-CR-0429 DAD-BAM<br><br>VIOLATIONS: 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, 18 U.S.C. § 2 - Conspiracy to Distribute and to Possess with the Intent to Distribute a Controlled Substance and Aiding and Abetting; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 18 U.S.C. § 2 – Distribution of a Controlled Substance and Aiding and Abetting; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 18 U.S.C. § 2 - Possession of a Controlled Substance with the Intent to Distribute and Aiding and Abetting; 18 U.S.C. § 371 – Conspiracy to Defraud and to Commit an Offense against the United States; 21 U.S.C. §§ 331(a) and 333(a)(2); 18 U.S.C. § 2 – Introduction into Interstate Commerce of Misbranded Drugs and Aiding and Abetting; 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. §§ 334 and 853(a); 28 U.S.C. § 2461(c) – Criminal Forfeiture |

S U P E R S E D I N G   I N D I C T M E N T

INTRODUCTORY ALLEGATIONS

   At all times material to this indictment:

1.   **Controlled Substance Analogue**

   Pursuant to 21 U.S.C. § 802(32)(A), a controlled substance analogue means a substance —

   (i)      the chemical structure of which is substantially similar to the chemical structure of a

SUPERSEDING INDICTMENT

1

1    controlled substance in schedule I or II;

2    (ii)    which has a stimulant, depressant, or hallucinogenic effect on the central nervous system

3    that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic

4    effect on the central nervous system of a controlled substance in schedule I or II; or

5    (iii)    with respect to a particular person, which such person represents or intends to have a

6    stimulant, depressant, or hallucinogenic effect on the central nervous system that is

7    substantially  similar to or greater than the stimulant, depressant or hallucinogenic effect

8    on the central nervous system of a controlled substance in schedule I or II.

9    2.    **Treatment of Controlled Substance Analogue as Controlled Substance**

10    Pursuant to 21 U.S.C. § 813, a controlled substance analogue shall, to the extent intended for

11    human consumption, be treated, for the purposes of any Federal law as a controlled substance in

12    schedule I.

13    3.    **AM-694**

14    AM-694 is a schedule I controlled substance as of July 9, 2012.  Prior to that, it was controlled

15    substance analogue under 21 U.S.C. § 802(32)(A). AM-694 is also a drug under the Federal Food,

16    Drug, and Cosmetic Act ("FDCA"), as defined herein.

17    4.    **AM-2201**

18    AM-2201 is a schedule I controlled substance as of July 9, 2012.  Prior to that, it was a

19    controlled substance analogue under 21 U.S.C. § 802(32)(A). AM-2201 is also a drug under the FDCA,

20    as defined herein.

21    5.    **4-FA**

22    4-FA, or p-fluoroamphetamine, is a controlled substance analogue under 21 U.S.C.

23    § 802(32)(A).  4-FA is also a drug under the FDCA, as defined herein.

24    6.    **4-FMC**

25    4-FMC is a controlled substance analogue under 21 U.S.C. § 802(32)(A).  4-FMC is also a drug

26    under the FDCA, as defined herein.

27    7.    **JWH-018**

28    JWH-018 is a schedule I controlled substance.  JWH-018 is also a drug under the FDCA, as

1  defined herein.

2      8.    **JWH-073**

3  JWH-073 is a schedule 1 controlled substance.  JWH-073 is also a drug under the FDCA, as

4  defined herein.

5      9.    **JWH-081**

6  JWH-081 is a schedule 1 controlled substance as of July 9, 2012.  Prior to that date, it was a

7  controlled substance analogue under 21 U.S.C. § 802(32)(A).  JWH-081 is also a drug under the

8  FDCA, as defined herein.

9      10.   **JWH-122**

10  JWH-122 is a schedule I controlled substance as of July 9, 2012.  Prior to that, it was a controlled

11  substance analogue under 21 U.S.C. § 802(32)(A).  JWH-122 is also a drug under the FDCA, as

12  defined herein.

13      11.   **JWH-203**

14  JWH-203 is a schedule 1 controlled substance as of July 9, 2012.  Prior to that, it was a controlled

15  substance analogue under 21 U.S.C. § 802(32)(A).  JWH-203 is also a drug under the FDCA, as

16  defined herein.

17      12.   **JWH-210**

18  JWH-210 is a controlled substance analogue under 21 U.S.C. § 802(32)(A).  JWH-210 is also a

19  drug under the FDCA, as defined herein.

20      13.   **JWH-250**

21  JWH-250 is a schedule I controlled substance as of July 9, 2012.  Prior to that, it was a controlled

22  substance analogue under 21 U.S.C. § 802(32)(A).  JWH-250 is also a drug under the FDCA, as

23  defined herein.

24      14.   **4-MEC**

25  4-MEC is a controlled substance analogue under 21 U.S.C. § 802(32)(A).  4-MEC is also a drug

26  under the FDCA, as defined herein.

27      15.   **5-MeO-DALT**

28  5-MeO-DALT is a controlled substance analogue under 21 U.S.C. § 802(32)(A).  5-MeO-DALT

1   is also a drug under the FDCA, as defined herein.

2          16.    **RCS-4**

3          RCS-4 is a schedule I controlled substance as of July 9, 2012.  Prior to that, it was a controlled

4   substance analogue under 21 U.S.C. § 802(32)(A).  RCS-4 is also a drug under the FDCA, as defined

5   herein.

6          17.    **XLR11**

7          XLR11, also known as 5-F-UR-144, is a schedule I controlled substance as of May 16, 2013.

8   Prior to that, it was a controlled substance analogue under 21 U.S.C. § 802(32)(A).  On April 12, 2013,

9   the United States Drug Enforcement Administration placed a public notice in the Federal Register of its

10  intent to schedule XLR11 as a schedule I controlled substance.  XLR11 is also a drug under the FDCA,

11  as defined herein.

12         18.    **United States Drug Enforcement Administration**

13         The United States Drug Enforcement Administration ("DEA") is the primary federal agency of

14  the United States responsible for coordinating drug law enforcement activities.  Its primary mission is to

15  enforce controlled substances laws, pursuant to Title 21, United States Code, Sections 801, *et seq*., and

16  regulations.

17         19.    **United States Food and Drug Administration**

18                a. The United States Food and Drug Administration ("FDA") is the federal agency of the

19  United States responsible for protecting the health and safety of the American public by enforcing the

20  Food, Drug and Cosmetic Act ("FDCA") and its implementing regulations found in Title 21, United

21  States Code, Sections 301, *et seq*.  One main purpose of the FDCA is to ensure that drugs sold for

22  administration to humans, or for consumption or other use by humans, are safe, effective, and bear

23  labeling containing only true and accurate information.  The FDA's responsibilities under the FDCA

24  include regulating the manufacture, labeling, and distribution of all drugs shipped or received in

25  interstate commerce.  The FDA's responsibilities also include preventing drugs that are unapproved for

26  marketing or sale, or which are improperly packaged and labeled, from reaching the marketplace.

27                b. To legally introduce, deliver for introduction, or cause the delivery or introduction

28  into interstate commerce of any drug or to legally receive in interstate commerce any drug that is

1  misbranded, and deliver or proffer delivery thereof for pay or otherwise, all persons are required to
2  comply with all applicable provisions of the FDCA.

3            c. Under the FDCA, upon first engaging in the manufacture, preparation, propagation,
4  compounding, or processing of any drug, every person is required to immediately register his or her
5  name, place of business, and all such establishments owned or operated by such person, pursuant to Title
6  21, United States Code, Section 360(c). Pursuant to Title 21, United States Code, Section 360(a)(1), the
7  terms "manufacture, preparation, propagation, compounding, or processing" include repackaging or
8  otherwise changing the container, wrapper, or labeling of any drug during the time between the original
9  manufacture and the final sale to the ultimate consumer or user.

10           d. Under the FDCA, drugs are defined as, among other things, articles intended for use in
11  the diagnosis, cure, mitigation, treatment, or prevention of disease in man, 21 U.S.C. § 321(g)(1)(B);
12  articles intended to affect the structure or any function of the body of man, 21 U.S.C. § 321(g)(1)(C); or
13  articles intended for use as components of other drugs. 21 U.S.C. § 321(g)(1)(D).

14           e. Under the FDCA, the introduction, delivery for introduction, or causing the
15  introduction or delivery for introduction into interstate commerce of a drug that was misbranded is
16  prohibited. 21 U.S.C. § 331(a).

17           f. A drug is misbranded if, among other things:

18                 i. its labeling is materially false or misleading in any particular (21 U.S.C. §
19  352(a)):

20                 ii. its labeling accompanying products or their containers is materially false or
21  misleading (21 U.S.C. § 352(i));

22                 iii. its labeling does not bear the name and place of business of the manufacturer,
23  packer, or distributor, including the street address, city and zip code (21 U.S.C. § 352(b); 21 C.F.R. §
24  201.1(i));

25                 iv. its labeling fails to bear the established name of the drug, the established
26  name and quantity of each active ingredient, and the established name of any inactive ingredient (21
27  U.S.C. § 352(e));

28                 v. its labeling fails to bear adequate directions for use (21 U.S.C. § 352(f)(1)); or

1    vi.  its labeling fails to bear adequate warnings against use in those pathological

2  conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods

3  or duration of administration or application, in such manner and form, as are necessary for the protection

4  of users (21 U.S.C. § 352(f)(2)).

5    g.  "Adequate directions for use" means directions under which the layman could use a

6  drug safely and for the purposes for which it was intended (21 C.F.R. § 201.5).  No directions for an

7  intended use are *per se* inadequate.

8    h.  For purposes of the FDCA, the term "interstate commerce" includes commerce

9  between any State and any place outside thereof.

10    20.  **MIKHAEL ISSA KAMAR, aka Michael Kamar, aka Mike Kamar**

11    KAMAR was the president and sole officer of three businesses:  Four Aces Wholesale,

12  Corporation, GIJ Enterprises, and Sell for Less.

13    21.  **Four Aces Wholesale, Corporation**

14    Four Aces Wholesale, Corporation ("Four Aces Wholesale"), was an internet business located

15  at a warehouse in Bakersfield, California that was owned by KAMAR.  Four Aces Wholesale

16  conducted business through the website, www.fouraceswholesale.com, which offered for sale various

17  products associated with smoking paraphernalia and filled online orders for products, including

18  smokeable synthetic cannabinoids ("SSC"), commonly known at the street-level as "spice."

19    22.  **Sell for Less**

20    Sell for Less was a wholesale business for walk-in customers.  Sell for Less was involved in the

21  sale of smoking paraphernalia and SSC and was located first at 644 Bell Terrace, #5, in Bakersfield

22  and later at 1111 21st Street in Bakersfield, where Four Aces Wholesale was located.

23    23.  **Havana House/GIJ Enterprises**

24    GIJ Enterprises was doing business as Havana House, a smoke shop in Bakersfield, California.

25  ////

26  ////

27  ////

28  ////

COUNT ONE:  [21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 846; 18 U.S.C. § 2 - Conspiracy to Distribute and to Possess with Intent to Distribute a Controlled Substance and Aiding and Abetting]

24. The allegations of paragraphs 1 through 17 are realleged and incorporated herein by reference.

25.  The Grand Jury charges: T H A T

MIKHAEL ISSA KAMAR,
aka Michael Kamar,
aka Mike Kamar,

defendant herein, beginning at a time unknown, but no later than on or about March 1, 2011, and continuing to on or about June 26, 2013, in the County of Kern, within the State and Eastern District of California, and elsewhere, did knowingly and intentionally conspire and agree, and/or aid and abet to conspire and agree, with other persons, known and unknown to the Grand Jury, and/or aid and abet a conspiracy, to distribute and/or to possess with intent to distribute a mixture and substance containing a detectable amount of one or more of the following:

a.  AM-694

b.  AM-2201

c.  4-FA

d.  4-FMC

e.  JWH-018

f.  JWH-073

g.  JWH-081

h.  JWH-122

i.  JWH-203

j.  JWH-210

k.  JWH-250

l.  4-MEC

m.  5-MeO-DALT

n.  RCS-4

1        o.  XLR11,

2    which are classified as controlled substance analogues, knowing that the substances were intended for

3    human consumption, as provided in Title 21, United States Code, Section 813, or schedule I controlled

4    substances.

5        All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, and

6    Title 18, United States Code, Section 2 .

7    COUNT TWO:  [21 U.S.C. §§  841(a)(1) and 841(b)(1)(C), and; 18 U.S.C. § 2 – Distribution of
                 Controlled Substances and Aiding and Abetting]
8

9        26.  The allegations of paragraphs 1 through 17 are realleged and incorporated herein by

10   reference.

11       27.  The Grand Jury further charges: T H A T

12                      MIKHAEL ISSA KAMAR,
                           aka Michael Kamar,
13                          aka Mike Kamar,

14   defendant herein, beginning at a time unknown, but no later than on or about March 1, 2011, and

15   continuing to on or about June 26, 2013, in the County of Kern, within the State and Eastern District of

16   California, and elsewhere, did knowingly and intentionally distribute, and aid and abet the distribution

17   of, a mixture and substance containing a detectable amount of one or more of the following:

18       a.     AM-694

19       b.     AM-2201

20       c.     4-FA

21       d.     4-FMC

22       e.     JWH-018

23       f.     JWH-073

24       g.     JWH-081

25       h.     JWH-122

26       i.     JWH-203

27       j.     JWH-210

28       k.     JWH-250

SUPERSEDING INDICTMENT                         8

1        l.      4-MEC

2        m.     5-MeO-DALT

3        n.     RCS-4

4        o.     XLR11,

5   which are classified as controlled substance analogues, knowing that the substances were intended for

6   human consumption, as provided in Title 21, United States Code, Section 813, or schedule I controlled

7   substances,

8        All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title

9   18, United States Code, Section 2 .

10  COUNT THREE:        [21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2 – Possession with
                        Intent to Distribute Controlled Substances and Aiding and Abetting]
11

12       28. The allegations of paragraphs 1 through 17 are realleged and incorporated herein by

13  reference.

14       29. The Grand Jury also charges: T H A T

15                                  MIKHAEL ISSA KAMAR,
                                      aka Michael Kamar,
16                                     aka Mike Kamar,

17  defendant herein, beginning at a time unknown, but no later than on or about March 1, 2011, and

18  continuing to on or about June 26, 2013, in the County of Kern, within the State and Eastern District of

19  California, and elsewhere, did knowingly and intentionally possess with the intent to distribute, and aid

20  and abet the possession with intent to distribute, a mixture and substance containing a detectable amount

21  of one or more of the following:

22       a.      AM-694

23       b.      AM-2201

24       c.      4-FA

25       d.      4-FMC

26       e.      JWH-018

         f.      JWH-073

27       g.      JWH-081

28       h.      JWH-122

SUPERSEDING INDICTMENT                              9

i.      JWH-203

j.      JWH-210

k.      JWH-250

l.      4-MEC

m.      5-MeO-DALT

n.      RCS-4

o.      XLR11,

which are classified as controlled substance analogues, knowing that the substances were intended for human consumption, as provided in Title 21, United States Code, Section 813, or schedule I controlled substances,

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2 .

COUNT FOUR:      [18 U.S.C. § 371 – Conspiracy to Defraud and to Commit an Offense against the United States]

30.  The allegations of paragraphs 1 through 23 are realleged and incorporated herein by reference.

31.  The Grand Jury also charges: T H A T

MIKHAEL ISSA KAMAR,
aka Michael Kamar,
aka Mike Kamar,

defendant herein, beginning at a time unknown, but no later than on or about March 1, 2011, and continuing to on or about June 26, 2013, within the State and Eastern District of California, and elsewhere, did knowingly and intentionally conspire and agree with persons, known and unknown to the grand jury, to:

a.  defraud the United States by obstructing the lawful functions of its agencies, including the DEA and/or FDA, by deceitful or dishonest means; and/or

b.  commit an offense against the United States, to wit: to introduce, deliver for introduction, and cause the introduction and delivery for introduction into interstate commerce, with the intent to defraud or mislead a government agency involved in drug enforcement or

regulation, drugs, as defined in Title 21, United States Code, Section 321(g),including AM-694, AM-2201, 4-FA, 4-FMC, JWH-018, JWH-073, JWH-081, JWH-122, JWH-203, JWH-210, JWH-250, 4-MEC, 5-MeO-DALT, RCS-4, and/or XLR11, packaged and sold under various brand names, all of which were materially misbranded, in violation of Title 21 United States Code, Sections 331(a) and 333(a)(2).

## MANNER AND MEANS OF THE CONSPIRACY

32.  As part of the conspiracy to defraud, the defendant and others would misrepresent or cause to be misrepresented the true nature of substances containing AM-694, AM-2201, 4-FA, 4-FMC, JWH-018, JWH-073, JWH-081, JWH-122, JWH-203, JWH-210, JWH-250, 4-MEC, 5-MeO-DALT, RCS-4, and/or XLR11 that the conspirators purchased, obtained, manufactured, packaged, labeled, marketed, distributed, and/or sold to avoid detection and regulation by governmental agencies, including the DEA and/or FDA, and to facilitate the sale of drugs for money.

33.  Specifically, as part of the conspiracy to defraud the United States, the defendant and others would deceptively market, sell, and distribute smokeable synthetic drugs from his businesses, Sell for Less, Four Aces Wholesale, and Havana House in the Eastern District of California to customers and ultimate consumers throughout the United States.  The defendant and others would market, sell, and distribute these smokeable synthetic drugs as "herbal incense," "potpourri," and other erroneous names. The misbranded finished product would be sold under brand names described herein.

34.  As part of the conspiracy to commit an offense against the United States, the defendant and others, with the intent to defraud and mislead a government agency involved in drug enforcement or regulation, including the FDA, would obtain, sell, and distribute drugs, as defined by the FDCA, which were materially misbranded, in at least one of the respects described in paragraph 19, subparagraph f. Typically, drugs were misbranded in one or more of the following ways.  The drugs' labeling was false and misleading, in that the drugs were falsely labeled in a manner indicating that they were not for human consumption and were often falsely labeled as potpourri or similar aroma products not intended for human consumption.  In fact, the drugs were intended for human consumption.  The drugs' labeling also misrepresented the contents and failed to identify accurately the package's contents and intended use(s).  The drugs' packaging did not bear a label which fully identified the name and place of the

1   business of the manufacturer, packer, and distributor. The drugs' labeling did not include adequate
2   directions for use. The drugs' labeling did not include adequate warnings against the drugs' use where
3   such use might be dangerous to one's health, or warnings against unsafe dosages, methods, or durations
4   of administration or application, in such manner and form as were necessary for the protection of users
5   of the drugs.

6       35. As part of the conspiracy to introduce materially misbranded drugs into interstate commerce,
7   the defendant and others would sell, offer for sale, and ship mislabeled drugs that they distributed from
8   California to other states.

9       36. As part of the conspiracy to commit the described offense against the United States, the
10  defendant and others intended to defraud and mislead government authorities charged with the
11  enforcement of drug laws and regulations regarding the true nature of the materially misbranded drugs,
12  for the purpose of avoiding detection and preserving their ability to sell the drugs in exchange for
13  money.

## OVERT ACTS

15      37. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following
16  overt acts, among others, were committed in the Eastern District of California, and elsewhere:

17          a. On or about March 22, 2011, one or more members of the conspiracy sold for
18  shipment to Puff N Stuff in McCallen, Texas "K2 XXX Blonde." The "K2 XXX Blonde" brand
19  maintained by the defendant in the course of business was packaged with the label "K2 XXX Blonde"
20  and stated "Limited Edition" and "Unbelievable Strength." The product was misbranded in one or more
21  of the following ways. The product was falsely labelled "Not For Human Consumption." The product
22  did not identify the place of the manufacturer, packer, or distributor and did not bear adequate directions
23  for use or adequate warnings. The product also did not identify the contents.

24          b. On or about March 22, 2011, one or more members of the conspiracy sold for
25  shipment to Puff N Stuff in McCallen, Texas "K2 XXX Blueberry." The "K2 XXX Blueberry" brand
26  maintained by the defendant in the course of business was packaged with the label "K2 XXX Blueberry"
27  and stated "Limited Edition" and "Unbelievable Strength." The product was misbranded in one or more
28  of the following ways. The product was falsely labelled "Not For Human Consumption." The product

SUPERSEDING INDICTMENT                    12

1  did not identify the place of the manufacturer, packer, or distributor and did not bear adequate directions
2  for use or adequate warnings.  The product also did not identify the contents.

3              c.  On or about March 28, 2011, one or more members of the conspiracy sold for
4  shipment to Puff N Stuff in McCallen, Texas "Cloud 10 Storm."  The "Cloud 10 Storm" brand
5  maintained by the defendant in the course of business was packaged with the label "Cloud 10 Storm."
6  The product was misbranded in one or more of the following ways. The product did not identify the
7  place of the manufacturer, packer, or distributor and did not bear adequate directions for use or adequate
8  warnings.  It was also falsely labelled that the product was an "Aromatic Potpourri" that was "Lab
9  Certified" and "not designed or intended for human consumption."  The product also did not identify the
10 contents.

11             d.  On or about March 30, 2011, one or more members of the conspiracy sold for
12 shipment to Quick Stop in Thomaston, Georgia "K3 XXX Kryptonite," "K3 XXX Cosmic Blend," "K2
13 XXX Ultra," "K3 XXX Eclipse," "K2 XXX Strawberry," "K2 XXX Kush," "K3 XXX Bomb," K3
14 XXX Blueberry," "K2 XXX Grape," "K3 XXX Dynamite," " K2 XXX Chronic," "K2 XXX Blueberry,'
15 "K2 XXX Blonde," "K3 XXX Pineapple Express," and "K3 XXX Mucho Mango."  These products
16 maintained by the defendant in the course of business were labelled with the foregoing brand names.
17 The products were misbranded in one or more of the following ways. They did not identify the place of
18 the manufacturer, packer, or distributor and did not bear adequate directions for use or adequate
19 warnings. They were falsely labelled as "not for human consumption."  The products also did not
20 identify the contents.  The word "kush" refers to a strain of marijuana.

21             e.  On or about November 9, 2011, one or more members of the conspiracy caused to be
22 shipped from Wicked Aroma in Phoenix, Arizona to Bakersfield, California a parcel addressed to Sell
23 for Less at 644 Belle Terrace, #5, in Bakersfield a FedEx parcel containing  approximately 38 pounds of
24 "NUGZ," approximately 6.8 pounds of "Mr. Nice & Legal," and approximately 3.8 pounds of "Trance."

25             (i.) The "NUGZ" product consisted of a green leafy substance that was contained
26 in clear plastic vials labelled "NUGZ."  The word "nugz" is a street term for premium quality
27 homegrown marijuana. The "NUGZ" product was falsely labeled as "Hipnotik Potpourri" and "100%
28 legal," when, in fact, it contained AM-2201.

1    (ii.) The "Mr. Nice & Legal" product was packaged in sealed black packages
2  labelled "Mr. Nice & Legal." The "Mr. Nice & Legal" product was falsely labeled as "legal herbal
3  blend," when, in fact, it contained AM-2201. At that time, AM-2201 was a drug under the FDCA and a
4  controlled substance analogue.

5    (iii.) The "Trance" product was packaged in sealed black packages labelled
6  "Trance." The "Trance" product was falsely labeled as "Not for human consumption," when, in fact, it
7  was intended for human consumption and contained 4-FA. At that time, 4-FA was a drug under the
8  FDCA and a controlled substance analogue.

9    The foregoing "NUGZ," "Mr. Nice & Legal" and "Trance" products did not identify the
10  place of the manufacturer, packer, or distributor and did not bear adequate directions for use or adequate
11  warnings. They also did not identify the contents.

12    f. On or about February 17, 2012, the defendant or a user of his email account
13  sfl1989@yahoo.com , on behalf of" Four Aces" and "Fouraceswholesale.com," emailed H.L.in Guam
14  about whether H.L. had received permission from H.L.'s parents to order "NUGZ spice."

15    g. On or about September 25, 2012, the defendant or a user of his cell phone texted the
16  defendant's source of SSC supply in southern California the following: "Are you going to bring spice."

17    h. On or about November 19, 2012, one or more members of the conspiracy caused to be
18  sold for shipment to South Suter Store in Baton Rouge, Louisiana "Mad Hatter." The "Mad Hatter"
19  brand maintained by the defendant in the course of business was packaged with the label "Cloud 9 Mad
20  Hatter." The "Cloud 9 Mad Hatter" product was misbranded in one or more of the following ways. It
21  did not identify the place of the manufacturer, packer, or distributor and did not bear adequate directions
22  for use or adequate warnings. It was falsely labelled as "incense" and "not for human consumption." It
23  also did not identify the contents.

24    i. On or about December 1, 2012, the defendant texted his source of SSC supply in
25  southern California the following message: "Any more spice left."

26    j. On or about January 17, 2013, the defendant or a user of his email account
27  fouraceswholesale@yahoo.com contacted a sales representative for an SSC manufacturing and
28  distribution company named ZenBio operating in the Eastern and Northern Districts of California and

1 elsewhere, requested the shipment of "samples of potpourri," including ZenBio's synthetic cannabinoid

2 products "Orgasmo, Posh, Bizarro etc etc." to the Four Aces Wholesale location at 1111 21st Street in

3 Bakersfield.

4          k.  On or about April 23, 2013, one or more members of the conspiracy caused SSC

5 labeled as "Diablo" and "Devil's Inferno" to be made available for sale, and to be sold to an undercover

6 DEA agent, from the Havana House store at 3221 Niles Street. The packaging for "Devil's Inferno"

7 falsely stated that the product was "Not for Human Consumption" and was "Legal Premium Potpourri,"

8 when, in fact, it was intended for human consumption and contained XLR11. The packaging for

9 "Diablo" falsely stated that the product was "Botanical Incense," when, in fact, it was intended for

10 human consumption and contained XLR11. At that time, XLR11 was a drug under the FDCA and a

11 controlled substance analogue that had been publically noticed for scheduling on April 12, 2013.

12 XLR11 was scheduled as a schedule 1 controlled substance on May 16, 2013. The packaging of

13 "Diablo" and/or "Devil's Inferno" also failed to contain adequate directions for use or adequate

14 warnings and did not identify the drug it contained. The packaging also did not identify the name and

15 place of the manufacturer, packer, or distributor. The packaging failed to contain adequate labeling

16 and/or contained false and misleading information.

17          l.  On or about May 2, 2013, the defendant and other members of the conspiracy caused

18 sixteen different brands of SSC to be made available for sale, and to be sold to a confidential source,

19 from Four Aces Wholesale at 1111 21st Street in Bakersfield. Three of the brands–"Supernova 3rd

20 Gen." and "Scooby Doo Xtreme"–were falsely labeled as "not for human consumption,"when, in fact,

21 they were intended for human consumption and contained XLR11. At that time, XLR11 was a drug

22 under the FDCA and a controlled substance analogue that had been publically noticed for scheduling on

23 April 12, 2013. XLR11 was scheduled as a schedule 1 controlled substance on May 16, 2013. One of

24 the brands, "Supernova" was also falsely labeled as "not for human consumption," when, in fact, it was

25 intended for human consumption and contained AM-2201. At that time, AM-2201 was a drug under the

26 FDCA and a controlled substance. In addition, the packaging of the aforementioned brands failed to

27 contain adequate directions for use or adequate warnings and did not identify the drugs they contained.

28 The packaging also did not identify the name and place of the manufacturer, packer, or distributor. The

SUPERSEDING INDICTMENT                                    15

1  packaging failed to contain adequate labeling and/or contained false and misleading information.

2  m. On or about May 6, 2013, one or more members of the conspiracy caused to be sold

3  for shipment to an individual having the initials W.M. in Alexandria, Virginia "Scooby Snax." The

4  "Scooby Snax" brand maintained by the defendant in the course of business was packaged with the label

5  "Scooby Snax." The product was falsely labelled as "potpourri" and "Not for Human Consumption." In

6  addition, the packaging of the "Scooby Snax" brand failed to contain adequate directions for use or

7  adequate warnings and did not identify the drugs they contained. The packaging also did not identify

8  the name and place of the manufacturer, packer, or distributor. The packaging failed to contain adequate

9  labeling and/or contained false and misleading information.

10  n. On or about June 14, 2013, the defendant or a user of his email account

11  fouraceswholesale@yahoo.com emailed M.L. at specialtysaleswest@gmail.com and advised that "we"

12  have "about 50 pieces in stock" of "devils inferno or diablo," directing M.L. to call his employees for

13  assistance,

14  All in violation of Title 18, United States Code, Section 371.

15  COUNT FIVE:      [21 U.S.C. §§ 331(a) and 333(a)(2); 18 U.S.C. § 2 – Introduction into Interstate
16                   Commerce of Misbranded Drugs and Aiding and Abetting]

17  38. The allegations of paragraph 19 is realleged and incorporated herein by reference.

18  39. The Grand Jury also charges: T H A T

19  MIKHAEL ISSA KAMAR,
20  aka Michael Kamar,
    aka Mike Kamar,
21

22  defendant herein, beginning at a time unknown, but no later than on or about December 1, 2011, and

23  continuing to on or about June 26, 2013, within the State and Eastern District of California, and

24  elsewhere, did, with the intent to defraud and mislead a government agency involved in drug

25  enforcement or regulation introduce and/or deliver, or cause the introduction and/or delivery into

26  interstate commerce of drugs, as defined under the FDCA and consisting of controlled substances or

27  controlled substance analogues, including AM-694, AM-2201, 4-FA, 4-FMC, JWH-018, JWH-073,
28

JWH-081, JWH-122, JWH-203, JWH-210, JWH-250, 4-MEC, 5-MeO-DALT, RCS-4, and XLR11, which were materially misbranded, within the meaning of Title 21, United States Code, Section 352(a), in at least one of the respects described in paragraph 19, subparagraph f, herein, and in at least one of the following ways:

a. The drug's labeling was false and misleading or its container was misleading, in that the drug was falsely labeled or packaged in a manner indicating that it was not for human consumption or was falsely labeled as potpourri or similar aroma products not intended for human consumption, whereas, in truth and in fact, the drug was intended for human consumption;

b. The drug's labeling did not contain both the name and place of the manufacturer, packer or distributor;

c. The drug's labeling misrepresented the contents and failed to identify the name of the drug or the proportion of each active ingredient thereof contained within the packaging;

d. The drug's labeling failed to identify each inactive ingredient, including, but not limited to acetone, damiana, marshmallow, and/or mullein leaves, and flavoring contained within the packaging;

e. The drug's labeling did not include any, let alone, adequate directions for use; and

f. The drug's labeling did not include adequate warnings against the drug's use where such use might be dangerous to one's health, or warnings against unsafe dosages, methods, or durations of administration or application, in such manner and form as were necessary for the protection of user(s) of the drug,

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2) , and Title 18, United States Code, Section 2.

////

////

////

1  FORFEITURE ALLEGATION:      [18 U.S.C. § 981(a)(1)(C); 21 U.S.C. §§ 334 and 853(a);
                                28 U.S.C. § 2461(c) – Criminal Forfeiture]
2

3        The Grand Jury further alleges THAT:

4    1.      Upon conviction of one or more of the offenses alleged in Counts One through Three of

5  this Indictment, defendant MIKHAEL ISSA KAMAR, aka Michael Kamar, aka Mike Kamar, shall

6  forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), the following

7  property:

8
           a.      All right, title, and interest in any and all property involved in violations of Title
9
   21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, for which defendant is convicted,
10
11  and all property traceable to such property, including the following: all real or personal property, which

12  constitutes or is derived from proceeds obtained, directly or indirectly, as a result of such offense(s); and

13  all property used, or intended to be used, in any manner or part to commit or to facilitate the commission

14  of the offense(s), including:

15
                (i.) Approximately $2,676,000.00 in U.S. Currency;
16
                (ii.) Approximately $5,857.00 in U.S. Currency;
17
                (iii.) Real Property located at 1111 21st Street, Bakersfield, California APN:
18
19                005-262-01; and

20                (iv.) The domain name and website hosted at www.fouraceswholesale.com.

21          b.      The proceeds obtained as a result of the offense(s) of conviction in Counts One

22  through Three, in the form of a money judgment.

23
     2.      Upon conviction of the offense alleged in Count Four of this Indictment, defendant
24
25  MIKHAEL ISSA KAMAR, aka Michael Kamar, aka Mike Kamar, shall forfeit to the United States,

26  pursuant to Title 18, United States Code, Section 981(a)(1)(C), and 28 U.S.C. § 2461(c), the following

27  property:

28
           a.      All right, title, and interest in any and all property involved in violation of Title

SUPERSEDING INDICTMENT                          18

18, United States Code, Section 371, for which the defendant is convicted, and all property traceable to such property, including, the following:  any property constituting, or derived from, proceeds the defendants obtained directly or indirectly, as the result of such violation; and all property used, or intended to be used, in any manner or part to commit or to facilitate the commission of the offense, including:

(i.)  Approximately $2,676,000.00 in U.S. Currency;

(ii.)  Approximately $5,857.00 in U.S. Currency;

(iii.)  Real Property located at 1111 21st Street, Bakersfield, Kern County, California, APN: 005-262-01; and

(iv.)  The domain name and website hosted at www.fouraceswholesale.com.

b.      The proceeds obtained as a result of the offense of conviction in Count Four, in the form of a money judgment.

4.      Upon conviction of the offense alleged in Count Five of this Indictment, defendant MIKHAEL ISSA KAMAR, aka Michael Kamar, aka Mike Kamar, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 334, and 28 U.S.C. § 2461(c), the following property:

a.      Any article of food, drug, or cosmetic that is adulterated or misbranded when introduced into or while in interstate commerce or while held for sale after shipment in interstate commerce, or which may not be introduced into interstate commerce which may be disposed of by destruction.

6.      If any property subject to forfeiture, as a result of the offenses alleged in this Indictment, for which defendant is convicted:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

1      d.      has been substantially diminished in value; or

2      e.      has been commingled with other property which cannot be divided without

3              difficulty;

4  it is the intent of the United States pursuant to Title 28, United States Code, Section 2461(c),

5  incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of

6  defendants, up to the value of the property subject to forfeiture.

7

8

9                                                          A TRUE BILL.

10

11                                                          /s/ Signature on file w/AUSA

12                                                          _____
                                                            FOREPERSON
13
   PHILLIP A. TALBERT
14 Acting United States Attorney

15     **KIRK E. SHERRIFF**

16 By_____
   KIRK E. SHERRIFF
17 Assistant U.S. Attorney
   Chief, Fresno Office
18

19

20

21

22

23

24

25

26

27

28